## SMITH v. GOVERNMENT OF CANAL ZONE et al.

### SAME v. CORRIGAN et al.

(Circuit Court of Appeals, Fifth Circuit. March 20, 1918.)

### Nos. 3209, 3150.

1. PROCESS ⟪⟫119—SERVICE—WITNESSES.

Where a litigant came from Panama into the Canal Zone for the sole purpose of being present in court at the hearing of a motion made in a case brought there against him, and to testify in that hearing if an occasion for his doing so arose, such litigant was exempt from service of Canal Zone process while in attendance upon court and during a reasonable time in coming and going, though his attendance was not in obedience to process commanding it.

2. APPEARANCE ⟪⟫9(2)—JURISDICTION—ADMISSION OF.

That defendant's counsel moved to set aside service on the ground that the court was without jurisdiction of the subject-matter of the suit is not an admission of the court's jurisdiction over defendant's person or a consent to the exercise of it.

3. EXTRADITION ⟪⟫19—PERSONS EXTRADITED—EFFECT.

In view of Rev. St. § 5275 (Comp. St. 1916, § 10121), extradition should not be used as a means for obtaining jurisdiction of the person of the accused for civil proceedings, where defendant was extradited from Panama into the Canal Zone on a criminal charge, service on him of an order commanding him to appear and show cause why he should not be attached for contempt, made while he was in jail, held as an extradited prisoner, furnishes no basis for an adjudication in contempt.

4. APPEAL AND ERROR ⟪⟫485(2)—SUPERSEDEAS—CONTEMPT PROCEEDINGS.

Where, under Rev. St. §§ 1000, 1007 (Comp. St. 1916, §§ 1660, 1666), a bond superseding a decree appealed from had been given, the trial court is without jurisdiction to enforce obedience to the decree by contempt proceedings.

5. APPEAL AND ERROR ⟪⟫492—REVIEW—WRIT OF ERROR.

Where, in violation of the stay or supersedeas of a decree from which an appeal had been previously taken, the trial court attempted to enforce it by contempt proceedings, and the record and the parties were before the appellate court, it may set aside the judgment or order in the contempt proceedings as an attempt to enforce a decree suspended, though such judgment or order might not be subject to review on writ of error as attempted.

Appeal from and in Error to the District Court of the United States for the Canal Zone; William H. Jackson, Judge.

Suit by J. A. Corrigan and others against J. Budd Smith. From a decree for complainants, defendant appeals. Reversed, and suit dismissed. Proceeding by the Government of the Canal Zone, on rule of J. A. Corrigan and others, on J. Budd Smith, for contempt. There was a judgment punishing defendant for contempt, and he brings error. Reversed.

Felix E. Porter, of Ancon, C. Z., and Edwin T. Merrick, Philip Gensler, Jr., and Ralph J. Schwarz, all of New Orleans, La., for appellant and plaintiff in error.

Theodore C. Hinckley and Stevens Ganson, both of Panama, R. P., for appellees and defendants in error.

Before PARDEE, WALKER, and BATTS, Circuit Judges.

WALKER, Circuit Judge. By an appeal and by a writ of error J. Budd Smith (who will be referred to as the appellant) presents for review two judgments or decrees, one rendered in a suit brought against him by J. A. Corrigan and others (who will be referred to as the appellees), and the other in proceedings following a motion made by the appellees that the appellant be required to show cause why he should not be committed for contempt for an alleged violation by him of a temporary writ of injunction issued in the first-mentioned suit at the time it was brought. If it is to be regarded that there were two cases, instead of one, they are so related as to make it convenient, if not necessary, to consider them together. The following is a summary of so much of what is disclosed as needs to be set out:

The appellant was a citizen of New Jersey and had his domicile there, but for the greater part of the time during several months prior to April 9, 1917, he was a temporary resident of the republic of Panama, being there as the business representative of the Beneficial Loan Society, which had its principal place of business at Newark, N. J., and had business dealings with the Continental Banking & Trust Company; the latter being located and engaged in business in the city of Panama. Early in February, 1917, the Continental Banking & Trust Company was adjudged bankrupt by a Panama court, which appointed a temporary receiver of its property and assets; that court assuming custody and jurisdiction of the bankrupt's estate. The appellant did not at any time live in the Canal Zone, or engage in business or own property there. Some time prior to April 9, 1917, while he was temporarily in the Canal Zone, he was served there with process in a suit brought by one Cornet against him in the district court of the Canal Zone. Some question is made as to the validity of that service, but that question is not a material one in this case. At the request or direction of his counsel in that case the appellant on April 9, 1917, went from Panama into the Canal Zone to be present in the district court to give testimony, if necessary, on the hearing of a motion proposed to be made by his counsel for such an allowance of time for taking depositions as was required to secure the testimony of witnesses living in the United States. While the appellant was in the office of the clerk of the district court, awaiting the convening of the court, the marshal came in and handed to him the summons, complaint, and a restraining order or temporary injunction in a suit brought in the district court on that day by the appellees against him. That suit was brought by the appellees in behalf of themselves and all other creditors and persons interested in the liquidation of the affairs of the Continental Banking & Trust Company who may wish to come in and be parties to the suit, the complaint alleging that the appellees were creditors of that company, and praying the setting aside of described deeds to lands in Panama made to appellant by that company shortly before its bankruptcy, and that the appellant be restrained and enjoined from selling, conveying, or incumbering the lands so deeded to him. The temporary injunction or restraining order mentioned enjoined the appellant from selling,

conveying, transferring, or in any wise incumbering the property mentioned in the deeds described in the complaint.

Following the happening of the incident just mentioned the appellant was in the district court room when his counsel made the contemplated motion, but was not examined as a witness, the motion being granted by the court, without the occasion arising for adducing testimony of the appellant. On April 18th the appellant by his attorney filed a motion to dissolve the restraining order. The motion stated that the attorney appeared in appellant's behalf for the purpose of denying the jurisdiction of the court, and the grounds stated raised only the question of the right or jurisdiction of the court to make or enforce the order sought to be dissolved, and submitted no question going to the merits of the suit. On April 30th following the appellant by the same attorney moved the court to set aside the abovementioned service of the summons, complaint, and restraining order, on the ground that it was made while appellant was attending court in connection with the case of Cornet against him. The introductory words of that motion were:

"Comes now the above-named defendant by Felix E. Porter, his attorney, and, without in any manner waiving the jurisdiction of this court, moves the court," etc.

After hearing evidence on the motions they were overruled on May 10th. The evidence adduced proved the truth of the ground stated in support of the motion to set aside the service. That the court did not find otherwise is shown by the following statement made by the trial judge:

"Mr. Smith came into court on a certain matter in connection with the Cornet case. He came voluntarily, thinking that he might be needed, according to the testimony of his counsel, Mr. Porter, for the purpose of asking for a continuance for the purpose of taking depositions. I cannot say that he was here under any compulsion or restraint or here by reason of his appearing as a party litigant."

On May 21st the same attorney filed an answer for the appellant, the answer expressly stating that the attorney came—

"without in any manner waiving the jurisdiction and the validity of service in this cause, heretofore denied."

On May 23d the court, on motion of appellees, made an order that appellant on May 26th appear and show cause why he should not be attached for contempt for an alleged violation by him of the abovementioned temporary writ of injunction. On May 26th the marshal returned this order "not served"; the return stating that:

"The defendant J. Budd Smith cannot be located in the Canal Zone."

On May 29th the case against the appellant was called for trial in the district court, and the appellant's attorney then stated that the appellant was a resident of the republic of Panama and moved the court—

"to issue an order of exemption of the said Smith from the service of any process or from arrest while coming to, departing from, or in attendance upon this court for the purpose of the trial herein."

This motion was denied, an exception being reserved. What the court did immediately following the action just mentioned is shown by the following statement in its minutes for the same day:

"And on motion of the counsel for the plaintiffs herein the case is set for trial at 2 o'clock this afternoon, whether the defendant is in attendance or not. And the defendant's attorney consents under protest to go to trial without the presence of the defendant Smith."

At the time appointed and without the appellant being present, the trial of the case was entered upon, resulting in the rendition, on May 29th, of a decree perpetuating the preliminary injunction issued when the suit was brought, ordering the appellant to execute to the receiver appointed by the court of Panama in the above-mentioned bankruptcy proceeding conveyances to the lands described in the deeds which the complaint prayed to have annulled, and ordering the appellant to account to such receiver for all rents, issues and profits of the properties described in those deeds. On July 31, 1917, the appeal by appellant from that decree was allowed upon his giving bond, approved on the same day by the judge of the district court, with the condition:

"That if the said J. Budd Smith shall prosecute his said appeal to effect, and shall answer all damages and costs that may be awarded against him, if he fails to make his plea good, then the above obligation to be void; otherwise, to remain in full force and virtue."

On June 21, 1917, J. A. Corrigan, one of the appellees, made an affidavit charging the commission by the appellant of a "misdemeanor of contempt of court as defined and made punishable by the terms and provisions of section 131, paragraph 2, of the Penal Code of the Canal Zone," the affidavit showing that the charge made was based upon appellant's alleged disobedience of the above-mentioned temporary injunction by conveying and transferring to one Wallace, on May 11, 1917, all the property covered by the deeds mentioned in the complaint in that suit. On the same day the court issued its bench warrant for the arrest of the appellant and that he be brought before the district court to answer the charge made by the affidavit. On June 23d this warrant was returned not served. On the same day an alias bench warrant was issued. On the application made to public authorities of the republic of Panama for the extradition of the appellant to answer the above-mentioned criminal charge made against him in the Canal Zone his extradition was ordered by a Panama court. On September 4, 1917, while, as a result of the extradition proceedings, the appellant was in jail at Ancon, Canal Zone, he was for the first time served with a citation to show cause why he should not be attached for the above alleged civil contempt. He was brought before the court on September 7th. His counsel duly made the objections that the court was without jurisdiction to try the appellant on the charge of alleged criminal contempt because the offense charged was a misdemeanor, the exclusive original jurisdiction of which was in the magistrate court, and that the court was without jurisdiction to proceed in the civil contempt case, because the only service on the appellant of the citation therein was made while he was an extradited

prisoner in custody of the Canal Zone police, in a Canal Zone jail, under color of extradition from the republic of Panama. The district attorney, who was present, made it known to the court that a trial of the appellant for the criminal offense for which he was extradited was not insisted upon, and suggested that:

"The prosecution of the government case must wait upon your honor's action upon the civil case."

Thereupon the court overruled the objections made to the trial of the civil contempt proceedings, and entered upon a hearing, which resulted in the making on September 12, 1917, of an order which, after setting out findings made by the court, one to the effect that the appellant did, under date of May 11, 1917, transfer and convey to one Theodore Wallace the specific properties that the court's restraining order had directed him not to convey, sell, or incumber, and another that the instrument of transfer showed that the consideration therefor was the sum of $30,050, adjudged the appellant to be guilty of a contempt of the court, and ordered that he—

"be committed to a jail in the division of Balboa, Canal Zone, there to remain charged with said contempt of this court until he pay the said sum of $30,050 into this court for the use of the plaintiffs, and others lawfully entitled thereto, or until released by due process of law, and that a warrant for said commitment issue directed to the marshal of the Canal Zone or to any of his deputies or to any police officer of the Canal Zone to execute."

It was disclosed that the appellant claimed that the attacked deeds to lands in Panama were not made to him for his own use, but for the benefit of the corporation he represented, which, long before the Continental Banking & Trust Company was adjudged bankrupt, had made large loans to that company, which, at the time such loans were made, ineffectually undertook to secure them by depositing with another bank in Panama, for the lender's benefit, the deeds to the borrower conveying the lands which, shortly prior to the bankruptcy, were conveyed by the borrower to the appellant.

[1, 2] That the appellant, unless he had in some way waived or lost that right, was entitled to have set aside the service upon him of process in the suit brought against him by the appellees, made under the circumstances above narrated, is a proposition which the authorities do not leave open to doubt. On the advice of his counsel he came from Panama, where he resided, into the Canal Zone, for the sole purpose of being present in court at the hearing of a motion made in a case brought there against him, and to testify in that hearing if an occasion for his doing so arose. It fairly appears that his counsel anticipated, and not without reason, that, to support the motion proposed to be made, it might be required to adduce testimony which the appellant could give. The appellant as a witness coming from another jurisdiction was exempt from the service of Canal Zone process while in attendance upon court, and during a reasonable time in coming and going, though his attendance on the occasion in question was not in obedience to process commanding it. The reasons supporting the rule stated are sufficiently disclosed in the opinions rendered in the following cases: Stewart v. Ramsay, 242 U. S. 128, 37 Sup.

Ct. 44, 61 L. Ed. 192; Feister v. Hulick (D. C.) 228 Fed. 821; Central Ry. Signal Co. v. Jackson (D. C.) 238 Fed. 625; Stratton v. Hughes (D. C.) 211 Fed. 557; Kinne v. Lant (C. C.) 68 Fed. 436.

The case before us aptly illustrates how a nonobservance of the rule may lead to the result of a contested claim being tried in the absence of the party against whom it was made, when possibly that party might reasonably have anticipated being successful in the suit if present in person at the trial of it, but was kept away by the refusal of the court which was to pass on his rights to prevent his attendance subjecting him to more expense and hardship than the loss of the suit would entail. The action taken in the case by appellant's counsel in his behalf before the making of the motion to set aside the service raised only questions as to the court having jurisdiction of the subject-matter of the suit. No decision by the court of any question going to the merits of the suit was sought. The appellant's admission of the court's jurisdiction, or consent to the exercise of it, is not to be inferred or implied from a previous explicit denial of its jurisdiction, though such denial was based upon grounds other than the one stated in the motion to set aside the service of the process. A denial of jurisdiction is not to be given effect as an admission of it. Big Vein Coal Co. v. Read, 229 U. S. 31, 33 Sup. Ct. 694, 57 L. Ed. 1053; Pugh v. Loisel, 219 Fed. 417, 135 C. C. A. 221.

The court erred in overruling the motion to set aside the service of process upon the appellant. It did not acquire jurisdiction of the appellant's person as a result of his counsel, in his absence and under protest, taking part in the subsequent proceedings for the purpose of preventing the rendition of a judgment which the court was without jurisdiction to render. As that judgment must be reversed because of the court's lack of jurisdiction of the person against whom it was rendered, it is not necessary to decide whether, if the process had not been subject to be set aside, the court would have had jurisdiction of the subject-matter of the suit, the object of which was to subject land in Panama, held by a resident of Panama, to the payment of debts, alleged to be owing to the appellees and others by a corporation located in Panama, which, prior to the institution of the suit, had been adjudged bankrupt by a court of Panama, which had assumed control of the bankrupt's estate and was engaged in the administration of it.

[3] The judgment rendered in the contempt proceeding is not sustainable, even if the appellant was subject to be punished for disobeying an order which was never made effective by a valid service of process. The only service upon him of the order commanding him to appear and show cause why he should not be attached for contempt was made while he was in jail, held as an extradited prisoner. It seems that this was not permissible because of the court's lack of right to exercise jurisdiction of the appellant for any purpose other than the one for which he was delivered by the Panama authorities, unless the exercise of jurisdiction is based upon something happening after the extradition. United States v. Rauscher, 119 U. S. 407, 422, 7 Sup. Ct. 234, 30 L. Ed. 425; In re Reinitz (C. C.) 39 Fed. 204, 4 L. R. A. 236; In re Baruch (C. C.) 41 Fed. 472; Collins v.

Johnston, 237 U. S. 502, 35 Sup. Ct. 649, 59 L. Ed. 1071; U. S. R. S. § 5275 (Comp. St. 1916, § 10121).

However this may be, certainly a court should not allow itself to be made the instrument of perverting the process of extradition to serve the purposes of a private litigant who was instrumental in having that process resorted to with the object of having the extradited person subjected to a civil liability, instead of being tried for the crime with which he was charged. It is fairly to be inferred from circumstances disclosed that, if the procuring of the extradition was accompanied by a purpose to try the appellant on the criminal charge on which he was extradited, that purpose was a very secondary one and was subordinated to the controlling one of getting the appellant into the Canal Zone, so that civil process for an alleged contempt of court might be served upon him and a hearing on that charge had. It was not until after it had become apparent that service could not be made of the court's order to show cause that one of the appellees, at whose instance that order was procured, made the affidavit which was the beginning of the criminal proceeding against the appellant. That criminal charge was made the means of effecting the appellant's extradition. When, as a result of the extradition, the opportunity was afforded of trying the appellant on that charge, the public official whose duty it was to prosecute it, instead of manifesting a desire to avail himself of that opportunity, actively co-operated with the counsel for the appellees in the effort to have the court give precedence to a civil case brought against the appellant before the criminal proceeding was instituted—service of process in the civil case having been made while appellant was held in custody to answer the criminal charge—and volunteered the suggestion to the court that the criminal case must wait upon the court's action in the civil one. To say the least, there was the appearance of the process of extradition being permitted to be made use of, not for the ostensible public purpose which could justify the resort to it, but to afford to private litigants the opportunity of securing the enforcement against the appellant of an asserted civil liability.

[4] The judgment rendered in the contempt proceeding was, in necessary effect, an attempt to coerce the appellant to do what he was commanded to do by a judgment or decree which had been superseded, and was not then subject to be enforced by the trial court. The bond given and approved on the allowance of the appellant's appeal from the decree rendered on May 29th was made and approved within such time and was so conditioned as to effect a stay or supersedeas of that decree, service of the citation on that appeal having been made on the day the appeal was allowed. R. S. U. S. §§ 1000, 1007 (Comp. St. 1916, §§ 1660, 1666). By the terms of that superseded decree it perpetuated the preliminary injunction issued when the suit was brought, ordered the appellant to convey the lands described in the deeds which the complaint in the case prayed to be annulled, and ordered him to account for all rents, issues and profits of the properties described in those deeds. By the decree rendered in the contempt proceedings there was what amounted to an ascertainment by the court

that the sum of $30,050 was what the appellant was chargeable with because of his conveying the lands in question, and what he was required to pay to satisfy the superseded decree, and it was ordered that the appellant be committed to jail, there to remain until he pay the said sum as he was ordered to do. We are of opinion that the court was without power so to coerce obedience to a decree which had ceased to be enforceable by it.

[5] As above indicated, the record before us discloses that at the instance of the appellees the court in the contempt proceedings made an order having the effect of a violation of the stay or supersedeas of a decree previously appealed to this court and undisposed of by it at the time such order was made. Though that order or judgment, considered as one made in an independent suit or proceeding, may not be subject to be reviewed on a writ of error (In re Chetwood, 165 U. S. 443, 462, 17 Sup. Ct. 385, 41 L. Ed. 782), yet, the record and the parties being before us, it is subject to be set aside by this court because of its having the effect of an attempted enforcement of a decree not subject to be enforced by the trial court while the case in which it was rendered was pending in this court on a suspensive appeal. Stockton v. Bishop, 2 How. 74, 11 L. Ed. 184.

In view of conclusions above stated, it is not necessary to pass on the suggestion that if, in the circumstances existing when the contempt proceeding was heard, the appellant had been subject to be punished for a contempt of court, it was only in the criminal case which was not prosecuted. See Gompers v. Bucks Stove & Range Co., 221 U. S. 418, 449, 31 Sup. Ct. 492, 55 L. Ed. 797, 34 L. R. A. (N. S.) 874.

Because of errors pointed out, each of the judgments presented for review is reversed, and the suit and the proceeding in which, respectively, those judgments were rendered are dismissed.

Reversed.